UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| BILLY W. LOCKE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No.:  1:22-CV-2-TRM-CHS |
| | ) |
| MCMINN COUNTY JAIL, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

Plaintiff's pro se prisoner's complaint for violation of 42 U.S.C. § 1983 is before the Court for screening in accordance with the Prison Litigation Reform Act ("PLRA"). 28 U.S.C. §§ 1915(e)(2)(B) and 1915A.

## I.  ALLEGATIONS OF COMPLAINT

Plaintiff was housed at the McMinn County Jail (the "Jail") between May 2020 and April 2021. (*See, e.g.,* Doc. 2.) Plaintiff first alleges that, during that time, the Jail and phone company, Securus Phone Company, "cut off" phone calls prior to the expiration of the paid talk time to maximize profits and prevent Plaintiff from talking about his rights or legal action. (*Id.* at 3-5.)

Second, Plaintiff also claims that a doctor advised him in July 2020 that he needed an emergency surgery for a hernia. (*Id*. at 7.) Plaintiff alleges that he filed medical requests "three or four times" at the Jail to get the hernia repaired without result, even though he was charged a $15.00-to-$17.00 co-pay for medical care every time he went to the doctor while housed at the Jail. (*Id.*)

Third, Plaintiff contends that, between May 2020 and April 2021, his outgoing legal mail was sometimes delayed for up to two weeks and incoming mail was sometimes being opened

before it was brought to him.  (*Id*. at 9.)  Specifically, he alleges that his legal mail "to the courts" was not sent as addressed on November 23, 2020, and, in January or February 2021, his legal mail was not picked up for delivery to the mail department, because it was sealed.  (*Id*.)

Fourth, Plaintiff contends that McMinn County Sheriff is charging inmates for "indigent kits" and medical care that has already been paid for with the tax dollars "that [he] and [his] family ha[ve] paid."  (*Id*. at 10.)  Plaintiff states that he was given one pair of socks and one pair of boxers upon his arrival at the Jail on May 24, 2020, and that for over two weeks he wore the same clothing.  (*Id*.)  When he complained, Plaintiff was allegedly informed that he had to purchase any additional clothing from commissary.  (*Id*.)

Fifth, Plaintiff claims that between May 2020 and April 2021, he filed numerous grievances at the Jail that went unanswered.  (*Id*. at 11.)

Sixth, Plaintiff claims that he has been charged $309.00 in court costs from the Tennessee Department of Correction and the State of Tennessee, which constitutes harassment of the poor.  (*Id*. at 12-13.)

Aggrieved of these alleged constitutional violations, Plaintiff seeks $1,000,000 in monetary damages.  (*Id*. at 6.)

## II. SCREENING STANDARD

Under the PLRA, district courts must screen prisoner complaints and *sua sponte* dismiss any claims that are frivolous or malicious, fail to state a claim for relief, or are against a defendant who is immune.  *See, e.g.,* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999).  The dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) "governs dismissals for failure state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)."  *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir.

2

2010). Thus, to survive an initial review under the PLRA, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Courts liberally construe pro se pleadings filed in civil rights cases and hold them to a less stringent standard than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, allegations that give rise to a mere possibility that a plaintiff might later establish undisclosed facts supporting recovery are not well-pled and do not state a plausible claim. *Twombly*, 550 U.S. at 555, 570. Further, formulaic and conclusory recitations of the elements of a claim which are not supported by specific facts are insufficient to state a plausible claim for relief. *Iqbal*, 556 U.S. at 681.

In order to state a claim under 42 U.S.C. § 1983, a plaintiff must establish that he was deprived of a federal right by a person acting under color of state law. 42 U.S.C. § 1983; *Braley v. City of Pontiac*, 906 F.2d 220, 223 (6th Cir. 1990) (stating that "Section 1983 does not itself create any constitutional rights; it creates a right of action for the vindication of constitutional guarantees found elsewhere").

### III. ANALYSIS

#### A. Co-Pays and Costs

In various claims, Plaintiff complains about the price of phone calls, indigent kits, medical care, and court costs to indigent inmates and/or inmates whose families have paid taxes to assure services to indigent prisoners. (*See generally* Doc. 2.)

To the extent Plaintiff makes this claim on behalf of other inmates and/or taxpayers in general, he lacks standing to assert the constitutional rights of others. *See Newsom v Norris*, 888 F.2d 371, 381 (6th Cir. 1989). Additionally, insofar as these allegations are levied against the Tennessee Department of Correction and/or the State itself, the doctrine of sovereign immunity

3

prevents Plaintiff from maintaining suit for money damages against these entities absent the State's consent. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989) (holding state is not "person" within meaning of § 1983); *WCI, Inc. v. Ohio Dep't of Public Safety*, 18 F.4th 509, 513–14 (6th Cir. 2021). The State of Tennessee has not waived its immunity to suit under § 1983 or state tort law. *Berndt v. State of Tennessee*, 796 F.2d 879, 881 (6th Cir. 1986) (noting that Tennessee has not waived immunity to suits under § 1983). Accordingly, Plaintiff cannot recover damages from the State or its agencies.

As to the merits of the claims, the Court notes that Plaintiff may maintain suit against any eligible Defendants only by demonstrating that the imposition of these costs and fees infringe upon a protected interest. *See Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) ("[T]he Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish one of these interests at stake."). To establish such an interest, Plaintiff must show that being deprived of that right or interest imposes on him an "atypical and significant hardship" relative to the ordinary circumstances of prison life. *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

"[L]awful incarceration results in the necessary limitation of many privileges and rights of the ordinary citizen." *Hill v. Estelle*, 537 F.2d 214, 215 (5th Cir. 1976) (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)). While it is well-settled that an inmate has a due process interest in his prison fund account, *see, e.g., Hampton v. Hobbs*, 106 F.3d 1281, 1287 (6th Cir. 1997), an inmate is not "deprived of his property by virtue of deductions from his prison trust account for court costs and medical co-payments." *Gallagher v. Lane*, No. 03-2263, 75 F. App'x 440, 441–42 (6th Cir. Sept. 13, 2003); *see also Bailey v. Carter*, 15 F. App'x 245 (6th Cir. 2001) (holding policy requirement payment for medical services, where funds are available, does not violate an inmate's constitutional rights). As to the alleged exorbitant cost of telephone rates, the Court notes that

4

prisoners possess no right to specified or unlimited telephone use. *Washington v. Reno*, 35 F.3d 1093, 1100 (6th Cir. 1994) (quotation marks and citation omitted). An institution's telephone rates, absent any suggesting facts that they deprive an inmate of the ability to access the phone altogether, do not implicate a constitutional right. *See, e.g., Whitenack v. Armor Med.*, No. 13-CV-2071, 2013 WL 2356110, at *4 (E.D.N.Y. May 28, 2013) (quoting *Johnson v. State of California*, 207 F.3d 650, 656 (9th Cir. 2000)) (dismissing detainee's claim that institution's phone rates were overpriced in part because he did not "allege any facts to support a reasonable inference that the telephone rates charged are 'so exorbitant as to deprive prisoners of phone access altogether'").

Here, Plaintiff has alleged no facts from which the Court could infer that he has been denied "indigent kits," medical care, or telephone use due to the cost of the services, and the fact that inmates are charged for these services and their court costs does not impose an atypical and significant hardship in relation to the ordinary incidents of prison life. *See Sandin v. Conner*, 515 U.S. 472, 484 (1995). Accordingly, these claims will be **DISMISSED** for failure to state a claim upon which relief may be granted.

### B. Medical Care

Plaintiff claims that Dr. Fretwell, the McMinn County Jail, Lieutenant Bosch, and Sheriff Joe Guy denied him medical treatment for a hernia from July 2020 until he was transferred to another institution in April 2021. (Doc. 2, at 7.) Specifically, Plaintiff contends that he was taken to a doctor in July 2020 for a lump in his groin area and was advised by the doctor that Plaintiff should be brought back for emergency surgery if he was not released from custody on his court date. (*Id*.) Apparently, Plaintiff was not released, as on September 29, 2020, he requested to have the surgery performed. (*Id*.) Plaintiff was evaluated by at least two physicians on multiple occasions and requested hernia surgery three or four times, but nonetheless, the surgery was not

5

Case 1:22-cv-00002-TRM-CHS   Document 7   Filed 01/24/22   Page 5 of 11   PageID #: 33

performed prior to Plaintiff's transfer in April 2021. (*Id*.)

The United States Constitution does not guarantee a prisoner "unqualified access to healthcare." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). However, the denial of constitutionally adequate medical care violates the Eighth Amendment's prohibition against cruel and unusual punishment, which proscribes acts or omissions that produce an "unnecessary and wanton infliction of pain." *Wilson v. Seiter*, 501 U.S. 294, 297 (1991). An Eighth Amendment claim for the denial of adequate medical treatment is composed of two parts: (1) an objective component, which requires a plaintiff to show a "sufficiently serious" medical need; and (2) a subjective component, which requires the plaintiff to show the defendants acted with "deliberate indifference" to that need. *Farmer v. Brennan*, 511 U.S. 825, 834, 842 (1994). Negligence is insufficient to establish liability; deliberate indifference requires a mental state amounting to criminal recklessness. *Santiago v. Ringle*, 734 F.3d 585, 591 (6th Cir. 2013) (citing *Farmer*, 511 U.S. at 834, 839-40). Therefore, to establish an official's liability, a prisoner must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

A prisoner cannot state a claim of deliberate indifference by suggesting that he was misdiagnosed or not treated in a manner he desired. *Sanderfer v. Nichols*, 62 F.3d 151, 154–55 (6th Cir. 1995) (finding provider possibly negligent but not deliberately indifferent when unaware of prisoner's serious heart condition); *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997) (finding "misdiagnoses, negligence, and malpractice" are not "tantamount to deliberate indifference"). As the Supreme Court has explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in

6

> diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976) (internal quotation marks omitted).

Further, where medical treatment has been provided, a prisoner's disagreement with the adequacy of care given does not implicate the Constitution. *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1996). This is because "federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.'" *Id.* Rather, to state a constitutional claim in such cases, a prisoner must show that his treatment was "so woefully inadequate as to amount to no treatment at all." *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2001).

Here, Plaintiff concedes that he was seen by at least two Jail physicians, and a radiology report attached to Plaintiff's complaint establishes a Jail physician referred Plaintiff for a testicular/scrotum ultrasound that was performed on July 1, 2020. (Doc. 2, at 8.) There is no notation in the report that Plaintiff has a hernia, and it notes no evidence of "acute posttraumatic abnormality." (*Id.* at 8.)[1] Therefore, the Court finds that the allegations levied by Plaintiff do not support an inference that any named Defendant has been deliberately indifferent to his serious medical needs. Rather, they suggest only that Plaintiff desired additional medical treatment that he did not receive. Such allegations are insufficient to raise a constitutional issue, and Plaintiff's claim for the denial of medical care will be **DISMISSED**.

---

[1] The report notes only that Plaintiff has "small" and "simple" hydroceles and left-epididymal cyst. (Doc. 2, at 8.) Both of these conditions involve a collection of fluid around the testicles. *See* Benendenhospital, *Hydrocele, varicocele and epididymal cyst treatments*, https://www.benendenhospital.org.uk/treatments-services/urology/hydroceleepididymal-cystsvaricocele-testicular-lumps-and-swellings/ (last accessed Jan. 4, 2022).

### C. Legal Mail

Plaintiff maintains that legal mail addressed "to the courts" was opened and not mailed out as addressed on November 23, 2020. (Doc. 2, at 9.) He also alleges that in January or February 2021, Defendant Lt. Bosch advised Plaintiff that his legal mail was not being sent out because it had been sealed. (*Id*.) Plaintiff also generally maintains his legal mail was not "picked up" for mailing for up to two weeks at times, and that his mail was brought to him opened on several occasions. (*Id*. at 9.)

A prisoner has a First Amendment right to receive and send mail, subject to reasonable limitations for "legitimate penological objectives." *Sallier v. Brooks*, 343 F.3d 868, 873-74 (6th Cir. 2003). Recognizing the need to balance the prison's needs for security and safety against the prisoner's countervailing legal rights, courts have held that prison officials can open "legal mail" and inspect it for contraband in the prisoner's presence, *Wolff v. McDonnell*, 418 U.S. 539, 576-77 (1974) "if such a request" to be present "has been made by the prisoner." *Sallier*, 343 F.3d at 874. In *Wolff*, the Supreme Court commented:

> We think it entirely appropriate that the State require any such communications to be specially marked as originating from an attorney, with his name and address being given, if they are to receive special treatment. It would also certainly be permissible that prison authorities require that a lawyer desiring to correspond with a prisoner, *first* identify himself and his client to the prison officials, to assure that the letters marked privileged are actually from members of the bar.

*Id.* at 576-77 (emphasis in original).

The Court finds Plaintiff's bare allegations that his mail was not picked up timely, and/or was opened outside of his presence are conclusory and fail to offer any factual specificity from which the Court could infer that either of these practices has violated his constitutional rights. Plaintiff does not state that he requested that legal mail be opened only in his presence, and he does not allege that he was in any way prejudiced by the delay in his outgoing mail. *See Wolff*,

8

418 U.S. at 577; *Lewis v. Casey*, 518 U.S. 343, 356–60 (1996) (finding plaintiff fails to state a claim for interference with access to courts absent actual injury); *Richardson v. McDonnell*, 841 F.2d 120, 121–22 (5th Cir. 1988) (holding delay in processing inmate mail does not offend Constitution absent demonstration that the delay resulted in legal prejudice).

Moreover, Plaintiff's allegation that his legal mail was opened and not mailed in November 2020 is time-barred by the applicable one-year statute of limitations on § 1983 actions. *See Wallace v. Kato*, 549 U.S. 384, 387 (2007); Tenn. Code Ann. § 28-3-104; *Foster v. State*, 150 S.W.3d 166, 168 (Tenn. Ct. App. 2004) (applying the one-year statute of limitations from Tenn. Code Ann. § 28-3-104 in a § 1983 claim).

This leaves only Plaintiff's claim that his January or February 2021 legal mail was not mailed out because it was sealed. The Court notes that this allegation could implicate Plaintiff's right to access the courts and/or his right to communicate with counsel. However, Plaintiff does not allege that he was prejudiced by the delay and/or denial of the mailing, nor does he identify the party(ies) to whom the mail was addressed, whether it was "properly and clearly marked" as legal mail, or whether the incident was isolated or recurring. *Kensu v. Haigh*, 87 F.3d 172, 174 (6th Cir. 1996). In short, Plaintiff offers the Court no factual details nudging Plaintiff's allegations from a possible constitutional violation to a plausible one. *See, e.g.*, *Twombly*, 550 U.S. at 555, 570 (undisclosed facts supporting recovery are not well-pled and do not state a plausible claim). Therefore, this claim will be **DISMISSED** for failure to state a claim upon which relief may be granted.

### D.  Grievances

Plaintiff complains that the Jail very rarely replies to his prisoner grievances. (Doc. 2, at 11.) However, inmates have no constitutional right to a grievance procedure, nor do they have a

9

right to have their grievances resolved. *See, e.g., See LaFlame v. Montgomery Cnty. Sheriff's Dep't*, 3 F. App'x 346, 348 (6th Cir. 2001) (citing *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996)). Accordingly, any alleged infirmities the grievance procedure fails to raise a viable constitutional issue, and this claim will be **DISMISSED**.

### E. Conditions

Liberally construing Plaintiff's complaint, the Court finds Plaintiff alleges that he was denied adequate clothing for over two weeks upon his arrival at the Jail in May 2020. (Doc. 2, at 10.) "[T]he Constitution does not mandate comfortable prisons." *Rhodes v. Chapman* 452 U.S. 337, 349 (1981). Instead, only "extreme deprivations" that deny a prisoner "'the minimal civilized measure of life's necessities" will establish a conditions of confinement claim. *Hudson v. McMillan*, 503 U.S. 1, 8–9 (1992) (citations and quotations omitted). Prison authorities may not, however, "ignore a condition of confinement that is sure or very likely to cause serious illness and needless suffering the next week or month or year." *Helling v. McKinney*, 509 U.S. 25, 33 (1993). In examining such claims, the court must determine whether the risk of which the plaintiff complains is "so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk. In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate." *Id*. at 36 (1993); *see also Rhodes*, 452 U.S. at 347.

To the extent Plaintiff intended this allegation to raise a separate constitutional claim, it is filed well beyond the expiration of the statute of limitations and is time-barred. *See* Tenn. Code Ann. § 28-3-104; *Foster v. State*, 150 S.W.3d 166, 168 (Tenn. Ct. App. 2004) (applying the one-year statute of limitations from Tenn. Code Ann. § 28-3-104 to a § 1983 claim). Nonetheless, Plaintiff concedes that he could have purchased additional clothing from commissary, and that he

was able to hand wash his socks and underwear during the approximate two-week period. (Doc. 2, at 10.) Accordingly, the Court otherwise finds that the denial of additional clothing at government expense did not pose a grave risk to Plaintiff's health, and this claim will be **DISMISSED**.

### III. CONCLUSION

For the reasons set forth above:

1. Even liberally construing Plaintiff's complaint, he fails to state a claim upon which relief may be granted under § 1983, and this action is **DISMISSED** pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; and

2. The Court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous. *See* Rule 24 of the Federal Rules of Appellate Procedure.

**SO ORDERED**.

/s/ *Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**